[File No. 7260]

C. R. CARY, Respondent, v. ANTON R. KAUTZMAN and ELIZABETH KAUTZMAN, Appellants.

(53 NW2d 99)

876

Opinion filed March 25, 1952.   Rehearing denied May 15, 1952

*Murray & Murray,* for appellants.
*C. J. Schauss,* and *John F. Lord,* for respondent.

Sathre, J.   This is an action in forcible detainer brought by C. R. Cary plaintiff and against Anton R. Kautzman and Elizabeth Kautzman, his wife, defendants.

The complaint alleges that the plaintiff is the record owner of the premises involved, that he leased the said premises to the defendants under a written lease whereby the defendants agreed to pay rent at the rate of $27.27 per month and an additional sum to cover taxes and special assessments; that the defendants have failed and refused to make the payments provided by the lease, and that they are in default of such payments in the sum of $199.00 and that the plaintiff has not waived

such payments. Plaintiff demands judgment for said sum of $199.00 and for possession of the premises covered by the lease.

The defendants answered alleging that they are the equitable owners of the premises described in the complaint; that they derive their title through the plaintiff; that on or about the 26th day of August 1948, the plaintiff entered into an agreement in writing with the defendants wherein and whereby the plaintiff leased said premises to the defendants for the period of ninety-six (96) months and ending on the 1st day of September 1956; that said written lease contains an option to purchase wherein and whereby plaintiff agreed to sell the property to the defendants for the sum of twenty-five hundred dollars ($2500.00) and that the defendants would have until the 1st day of October, 1956 to exercise said option; that on the date said lease was executed these defendants exercised the option to purchase and paid the plaintiff five hundred dollars ($500.00) as part of said purchase price; that in said option agreement it is provided that the defendants shall have until October, 1956, in which to pay the balance of the purchase price, to-wit: two thousand dollars ($2000.00) with interest thereon at the rate of seven per cent; that in addition to the payment of said five hundred dollars ($500.00) as a part of the purchase price, these defendants also paid an additional payment of approximately three hundred dollars ($300.00) on the purchase price, making a total payment on the purchase price of eight hundred dollars ($800.00); and that no part of said purchase price is now due.

The answer put in issue the title to the premises involved and the Justice of Peace certified the case to the District Court of Morton County.

The District Court held that the defendants had not exercised the option to purchase, that they were in default in the payment of rentals, and ordered judgment in favor of the plaintiff for $199.00 past due rentals and costs, and for immediate possession of the premises. From this judgment the defendants appeal.

The record contains no settled statement of the case, no transcript of the evidence taken at the trial and no stipulation of

facts. The appeal must therefore be deemed to have been taken upon the judgment roll.

The defendants assign several specifications of error, but only two need to be considered here, viz;

1. That the court erred in holding that the defendants were properly served with notice to quit.

2. In not granting defendants' motion for judgment on the findings of fact.

We shall consider the assignments in the above order.

It is the contention of the defendants that the plaintiff failed to prove jurisdictional facts sufficient to sustain forcible entry and detainer in that there was no legal service of the notice to quit as required by section 33–0602 NDRC 1943, and that therefore the justice of peace was without jurisdiction to certify the case to the district court. Section 33–0602 provides that in forcible detainer actions the notice to quit may be served and returned as a summons is served and returned. Upon this point the district court found that on September 19, 1950, the plaintiff served upon the defendant, Anton Kautzman, a notice to quit, introduced in evidence as plaintiff's exhibit 2 and that on September 26, Clayton Kitchen served upon the defendant Anton Kautzman an identical notice introduced in evidence as plaintiff's exhibit 1. Clayton Kitchen made an endorsement upon the original notice to quit to the effect that he had served the same upon the defendant Kautzman. This was the only proof of service filed in justice court. Upon the trial in district court the plaintiff was permitted to file with the Clerk of Court an affidavit of service by Clayton Kitchen setting forth that he served such notice to quit upon Anton Kautzman at the place of residence of Anton Kautzman and Elizabeth Kautzman, but said affidavit of service was not introduced in evidence. `This affidavit by Clayton Kitchen shows that the notice to quit was served as provided by law by a person legally qualified to make the service. The district court further found "that the defendants by their answer denied the relation of landlord and tenant existed between the defendants and the plaintiff and the defendants claimed ownership of property described in the com-

plaint. That by said disclaimer of the relationship of landlord and tenant the defendants waived notice to quit the premises".

"The necessity of a notice to quit is removed by the tenant's disclaimer of the relation of landlord and tenant, or by his repudiation of the title of his landlord". 52 CJS Sec. 736, page 596.

Hollar v. Saline Products, 78 Pac2d 237, 25 Cal App 542.

"It is a general rule that a right of a tenant to notice to quit is waived by the disclaimer of his landlord's title."

32 Am Jur Sec. 1007, page 845.

In the case of McLain v. Nurnberg, 16 ND 144, 112 NW 243, it was held that a justice of the peace acquires jurisdiction to try and determine an action for forcible detainer under section 8406 Rev. Codes of 1905 (33-0601 NDRC 1943) by the giving of a notice to quit although such notice is not filed with the justice when the summons is issued.

The defendants having put in issue the title to the premises involved they cannot now challenge the validity of the service of the notice to quit. We hold therefore that the justice of the peace had jurisdiction and that the findings of the trial court on this point were correct.

The second assignment for our consideration is whether the district court erred in not granting defendants' motion for judgment on the findings of fact.

The findings so far as material here are as follows:

1.

That this is an action for the recovery of possession of the real property described in the complaint.

2.

That the plaintiff is the owner of the property described in the complaint.

3.

That on the 26th day of August, 1948, the plaintiff leased the said real property to the defendants by written lease (with option to purchase) which lease is set out in full as follows:

## Lease (With Option to Purchase)

This Indenture, Made in duplicate this 26th day of August, A. D. 1948, between C. R. Cary, of Mandan, North Dakota, party of the first part, hereinafter designated the Lessor, and Anton R. Kautzman and Elizabeth G. Kautzman, his wife of Mandan, North Dakota, parties of the second part, hereinafter designated the Lessees, Witnesseth:

That the Lessor, for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by the Lessees, and Lessees' executors and administrators, has demised and leased to the Lessees the following described premises, situate in the County of Morton and State of North Dakota, to-wit:

Lot 1, Block 89, First Northern Pacific Addition to City of Mandan, State of North Dakota,

together with the privileges and appurtenances, for and during the term of 96 months, commencing on the 1st day of September, 1948, and ending on the 1st day of September, 1956, the said property is to be used by the Lessees.

If, at any time, the Lessor should advance the Lessees, money for the purpose of making repairs, then the Lessees agree to repay such advances, with interest at the rate of seven per cent per annum from the date such advances are made, at the date of the termination of this lease.

The Lessees covenant and agree that they will pay to the Lessor for the use of the property above mentioned and described, rent as follows:

1. The sum of Twenty-Seven and 27/100—($27.27) on the 1st day of each month during the life of this lease, commencing on the 1st day of October, 1948.

2. Together with and at the time of the payment of the rentals payable under the preceding section, a sum equivalent to one-twelfth of the estimated annual taxes on the property above described including special assessments, if any. If such aggregate payments in each year are insufficient to pay the taxes and special assessments actually levied against said property the Lessees shall pay the deficiency prior to the time such taxes become de-

linquent. If such aggregate payments in each year are greater than the taxes and special assessments actually levied against said property the excess shall be credited upon the next payment falling due hereunder.

3. Together with and at the time of the rentals payable under Section 1 hereof, an installment of the premiums that will become due and payable to renew the insurance on the premises covered hereby against loss by fire and extended coverage together with comprehensive liability, such installments to be equal to the estimated premiums next due, as estimated by the Lessor, divided by the number of months that are to elapse prior to the date when such premiums will become due. The Lessees also agree to pay to the Lessor the pro rata premium of all insurance policies now in force and effect on said premises, such payment to be made at the date hereof.

The Lessees agree to indemnify the Lessor against all claims and liability arising or to arise on account of the use and occupancy of said premises, or by reason of any hazards of any kind in connection therewith, and to assure the Lessor of such indemnity, agree to carry a comprehensive personal liability insurance policy during the term of this lease, the premium therefor to be paid by the Lessees.

· It is hereby expressly understood and agreed by and between the parties hereto, that this lease is made and the continuance of the term hereby demised is dependent upon the following conditions, viz., that the rent hereby reserved shall be paid by or on the day when the same shall become due by the terms hereof; that this lease or any part of the term thereby demised, shall not be assigned; nor the property or any part thereof be sublet or rerented, nor shall any alteration, addition or changes be made in or about the said property in any manner to deface or damage the same without the written consent of the Lessor; that the Lessees shall keep the building and improvements on said premises in good condition and repair at their own expense, and shall comply with all local ordinances and laws in force and effect at the date of the execution of this lease, or that may be hereafter enacted; that the Lessees shall not do or

permit anything to be done that will lessen the value of said property or increase the rate of or vitiate the insurance thereon; that the Lessees accept the said property in its present condition; that time is deemed and taken to be as the very essence of this lease and of all and each of the covenants and conditions herein and of the provisions of the option clause hereinafter set forth, and that unless all and each of the terms, covenants and conditions herein shall in all respects be complied with by the Lessees, at the respective times and in the manner herein specified and declared the term hereby demised, at the option of the Lessor, or the Lessor's executors, administrators, or assigns, shall cease and terminate, and the Lessor, or the Lessor's executors, administrators, or assigns, shall have full right to re-enter and occupy the premises hereinbefore described, and no waiver of time or performance shall be implied unless such waiver shall be in writing, signed by the Lessor. And, if at any time, said term shall end at the election of the Lessor, the Lessees covenant, promise, and agree to surrender and deliver up said above described property peaceably immediately upon such termination of said term as aforesaid, and in as good condition as now, necessary wear and damage by the elements excepted.

It is further agreed that damage or destruction of the property above mentioned by fire, wind or any other cause, shall not void this lease, and that the Lessor shall be under no obligation to rebuild or replace such property damaged or destroyed beyond the amount of insurance received by Lessor on account of such damage or destruction, which proceeds of insurance shall be applied by the Lessor to the rebuilding or replacing of such property, any cost in excess thereof to be borne by the Lessees.

It is further agreed that the Lessees may terminate this Lease at any time by giving the Lessor 60 days notice, in writing of Lessees intention to terminate the same, and after the expiration of such time the Lessees shall surrender said premises to the Lessor in as good condition as now, necessary wear and damage by the elements excepted, and the Lessees, upon payment of all rents to the date of such termination, including the

proportionate part of taxes, special assessments and insurance premiums to such date, and repaying any advances, made by Lessor for repairs, with interest as aforesaid, shall be exonerated from liability for the payment of rent for any period subsequent to such termination date.

It is further agreed, in consideration of FIVE HUNDRED AND NO/100 DOLLARS ($500.00) that the Lessees, or the Lessees' executors or administrators, may at any time while this lease is in full force and effect, but in no event later than October, 1956, purchase the property above mentioned for the sum of TWENTY-FIVE HUNDRED AND NO/100 DOLLARS ($2500.00) plus the aggregate of all advances made by the Lessor to the Lessees for repairs and improvements and interest on such advances from the date thereof to the date of the exercise of this option at the rate of seven per cent per annum payable in cash at the time of the exercise of this option in good and lawful money of the United States of America, and the Lessor personally and for the Lessor's heirs, executors, administrators and assigns, agrees to hold said property during the time aforesaid subject to this option to purchase, and upon the exercise of the option and payment of the purchase price aforesaid, agrees to transfer the said property to the Lessees or the Lessees' executors or administrators, by property Special Warranty Deed, executed by the Lessor, or the Lessor's heirs, executors, administrators or assigns, free and clear of all liens, and incumbrances except unpaid taxes and special assessments, if any, covenanted to be paid by the Lessees as rent.

In the event the Lessees or Lessees' executors or administrators, shall decide to purchase the property aforesaid at the above price and within said time, then and in that case the following sums shall be credited upon the purchase price, to-wit:

The aggregate of the sums paid as rent under Item 1 hereof, plus a sum equivalent to the interest on the sum of $500.00 from the date hereof to the date of the exercise of this option, at the rate of seven per cent per annum, and less a sum equivalent to interest on the payments made under Item 1 hereof, from the date of such respective payments to the date of the exercise of this option, at the rate of seven per cent per annum.

It is expressly agreed that in the event of the termination of this lease in any manner that such termination shall automatically cancel the option clause aforesaid.

In witness whereof, The parties have hereunto set their hands the day and year first above written.

Anton R. Kautzman

Elizabeth G. Kautzman

C. R. Cary.

The trial court further found as facts: That at the time of the execution of the lease the defendants paid to the plaintiff five hundred dollars, and that thereafter they made payments to the plaintiff in various amounts as shown by the plaintiff's exhibit 4 a copy of which is in the following form:

| | Name | Kautzman, Anton R. | | |
| | Account No. | Address | | |
| Date | Principal & Interest | Taxes & Insurance | Total Payment | Received By |
|---|---|---|---|---|
| Oct. 4, 48 | 27.27 | 2.73 | 30.00 | CRC |
| Nov. 2 | 27.27 | 2.73 | 30.00 | CRC |
| March 31, 49 | 10. | — | 10. | CRC |
| April 21 | 10. | — | 10. | CRC |
| April 28 | 10. | — | 10. | OM |
| May 4 | 10. | — | 10. | OM |
| May 12 | 10. | — | 10. | CRC |
| June 17 | 20. | — | 20. | CRC |
| Aug. 8 | 30. | — | 30. | KG |
| Aug. 30 | 30. | — | 30. | KG |
| Sept. 23 | 40. | — | 40. | KG |

That the defendants made no payments to the plaintiff other than the payment of Five Hundred and no/100 Dollars ($500.00) set out in paragraph V above and those payments shown by the book of account hereinbefore set out.

That the defendants were in default in the payment of rentals.

That they had wholly failed to exercise the option to purchase.

Upon said findings of fact the trial court concluded as a matter of law that the lease had been terminated; that the plaintiff was

the owner of the premises and entitled to the immediate possession thereof, and ordered judgment to be entered accordingly.

The defendants contend that the District Court erred in concluding that defendants had not exercised the option to purchase. They argue that by payment of $500.00 on the date of the execution of the lease as found by the trial court in its findings they exercised the option to purchase and that the payment of $500.00 should be applied on the purchase price. It is further argued that the plaintiff's exhibit 4 clearly shows that the payments made by the defendants were not rentals but according to the record kept by the plaintiff were installment payments upon the principal and interest of the purchase price.

Respondent contends that the sum of $500.00 paid by the defendants was the consideration for the option to purchase the premises at any time during the life of the lease, that they never exercised the option to purchase and that they have forfeited all their rights under the lease. It is argued that since this is jury case tried to the court and the evidence does not appear in the record on appeal it must be presumed that the findings are fully supported by the evidence.

It is well settled that there can be no review of the findings without a settled statement of the case; that the facts found by the trial court must be accepted as true. The question for determination by this court is therefore whether the conclusions of law made by the trial court are warranted by the facts as found. Brandenburg v. Phillips, 18. ND 200, 119 NW 542; Brown v. Skotland, 12 ND 445, 97 NW 543.

Paragraph 3 of the findings set out the lease verbatim. It is a rather lengthy document. It covers a term of 96 months. The rentals are fixed at $27.27 per month. It sets out in detail numerous obligations to be performed by the lessees. It provides that at the time of payment of the rentals the lessees shall pay a sum equivalent to one twelfth of the estimated annual taxes on the premises including special assessments, if any, and if such aggregate payments in each year are insufficient to pay the taxes and the special assessments actually levied against said property, the lessees shall pay the deficiency prior to the time such taxes become delinquent.

It further provides that at the time the monthly rentals are payable the lessees shall pay an installment of the premiums that will be due for renewal of the insurance on the premises against loss by fire, and for extended coverage together with comprehensive liability. The lessees are also required to pay the lessor the pro rata premium of all insurance policies in force at the date of the lease. All of the enumerated items which the lessees are required to pay under the terms of the lease are as a general rule obligations of owners rather than of lessees of real property.

Plaintiff's exhibit 4 is the account kept by the plaintiff of the payments made by the defendants. It will be noted that the rentals of $27.27 payable monthly are designated as principal and interest. If these payments were in fact rentals payable monthly there would of course be no interest due. The odd figures of the rentals would indicate that they were calculated on an amortization plan. Under the terms of the lease these payments would run for 96 months making a total of $2617.92. The purchase price agreed upon by the parties was $2500.00. If the sum of $500.00 paid on the date of execution of the contract was applied in payment of the principal, it would leave a balance of $2000.00. Amortization payments of $27.27 per month for 96 months would pay the principal in full and interest on the deferred payments at the rate of 7% per annum.

Plaintiff argues that his method of bookkeeping cannot change the unambiguous terms of a written contract. However plaintiff's method of keeping account of payments made by the defendants does not vary the terms of the lease; on the contrary it leaves a strong inference that he construed the lease to be a purchase contract. This is consistent with the theory of the defendants that they had exercised the option to purchase and that the written agreement, although denominated a lease, was in fact construed by the parties thereto to be a purchase contract.

The lease provided that the lessees had the option to purchase the premises at any time within the life of the lease upon payment of five hundred dollars. This sum was paid by the lessees on the date of the execution of the lease. It is the con-

tention of the defendants that they exercised the option to purchase by paying the said five hundred dollars. Plaintiff's record of payments made by the defendants is consistent with defendants' contention, and that both parties construed the lease to be a purchase contract.

Where a contract is open to more than one construction the construction that the parties themselves place upon it may be resorted to to determine their intention. Fargusson v. Talcott, 7 ND 193, 73 NW 207; Bailey v. Bailey, 53 ND 887, 207 NW 987.

As we have pointed out, all of the items enumerated in the lease which the lessees are required to pay in addition to the rentals, such as taxes, general and special, premiums for renewal of fire insurance policies, and for extended coverage together with comprehensive liability, are as a general rule obligations of owners rather than of lessees of real property. Although the contract is denominated a "lease" it has all the characteristics and earmarks of a purchase contract. Furthermore, plaintiff's exhibit 4 which is set out in the findings must be accepted for what it purports to be on its face. It is plaintiff's own record of payments made by the defendants. He designates the payments as having been made on principal and interest. The inference to be drawn from this record in light of the provisions of the written contract is that the payments were accepted by the plaintiff as payments upon the principal and interest on the purchase price of the premises described in the contract.

We hold therefore that the conclusions of law of the trial court that the defendants had not exercised the option to purchase are not warranted by the findings of fact; that the defendants exercised the option to purchase by payment of five hundred dollars when the lease was executed, and that the lease became a purchase contract from the date of its execution.

The judgment is reversed and the action dismissed.

MORRIS, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.